UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **ERIC NARAMORE,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 6:23-cv-531-AMM |
| ) | |
| **CITY OF JASPER, ALABAMA,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the court on a motion for summary judgment by defendant City of Jasper, Alabama ("the City"). Doc. 29. For the reasons stated below, the motion, Doc. 29, is **GRANTED IN PART** and **DENIED IN PART AS MOOT**. Count III is **DISMISSED WITHOUT PREJUDICE**.

### I.   BACKGROUND

The plaintiffs are a group of former and current firefighters employed by the City. *See, e.g.*, Doc. 27-15 at 4; Doc. 27-16 at 2; Doc. 27-19 at 3. In this lawsuit, they assert claims under the overtime compensation provisions of the Fair Labor Standards Act ("FLSA") applicable to firemen. *See generally* Doc. 24. Because those claims center on the City's use of a nineteen-day and a twenty-eight-day work period for purposes of compensating firefighters for overtime, the court describes

1

the facts of this case in the light of the work period used by the City at the time of the events.

### A. The Nineteen-Day Work Period

#### 1. The Firefighters' Compensation for Hours Worked

From approximately 1985 until 2022, firefighters for the City worked on a nineteen-day work period, meaning they worked 144 hours over a Nineteen-day period. Doc. 27-33 at 1; Doc. 27-27 at 14, 19; *see* Doc. 27-15 at 7. The City divided the firefighters into three groups, and each group rotated working a twenty-four hour shift before having forty-eight hours off. *See, e.g.*, Doc. 27-15 at 6. Each of the plaintiffs worked on this twenty-four/forty-eight-hour rotation, *see, e.g.*, Doc. 27-1 at 5; Doc. 27-13 at 4; Doc. 27-16 at 4, which resulted in them generally working either ninety-six or 120 hours in a work period, *see, e.g.*, Doc. 27-5 at 5.

This schedule inevitably resulted in one shift of firefighters working more than 144 hours, which entitled them to overtime compensation under the FLSA. *See, e.g.*, Doc. 27-22 at 3–4; Doc. 27-25 at 4; Doc. 27-23 at 3; *see also* 29 U.S.C. § 207(k); 29 C.F.R. § 553.230. To prevent those firefighters from working in excess of 144 hours, the City gave them a "Kelly Day." *See* Doc. 27-27 at 27. A "Kelly Day" is an additional day off "to reduce the total number of work hours down." *Id.* If a firefighter worked in excess of 144 hours, the City paid him or her overtime. *See* Doc. 27-22 at 4; Doc. 27-23 at 3.

The firefighters were salaried employees for the City. *See, e.g.*, Doc. 27-26 at 5. Although the City used a nineteen-day work period, it used a fourteen-day pay period. *See id.* The City calculated the firefighters' biweekly payment by dividing their salaries by twenty-six pay periods. Doc. 27-27 at 10; Doc. 27-26 at 5.

When a firefighter worked overtime, the City paid him or her overtime compensation. *See, e.g.*, Doc. 27-15 at 8; Doc. 27-20 at 5. The City calculated a firefighter's overtime rate by dividing the firefighters biweekly salary by 106, which is the average number of hours that a firefighter worked in the biweekly pay period (or a fifty-three hour weekly average), and then multiplied that number by 1.5. *See* Doc. 27-26 at 5; Doc. 27-1 at 12.

This case hinges in part on a discrepancy included on the firefighters' checks under the nineteen-day work period. Because of the payroll software used by the City, the firefighters' checks listed "80.00" under the heading "HOURS" and included a "PAY RATE" calculated by dividing the firefighter's biweekly salary by eighty hours. *See* Doc. 27-26 at 6; *see, e.g.*, Doc. 36-17 at 1–2; Doc. 36-18 at 1. It is undisputed that, absent inapplicable exceptions like beginner training programs, the plaintiffs always worked more than eighty-hours in a two-week span and averaged 106 hours. *See, e.g.*, Doc. 27-16 at 6–7; Doc. 27-9 at 7.

Nevertheless, the pay rate listed on the checks caused confusion for the firefighters, who believed that their overtime compensation rate should have been

3

calculated by using that number (which is derived by dividing their salary by eighty hours) instead of the calculation used by the City (dividing their salary by the 106 average hours). Dante Fields, the Fire Chief for the City's Fire Department, Doc. 27-26 at 3, received complaints about the City's pay system—mainly "seeing one figure on the check and being paid at a different rate" even though he says that all of the firefighters "knew that the rate on the check was incorrect" and that "it was common knowledge." *Id.* at 6–8.

### 2. The Firefighters' Compensation for Paid Leave

In June 2014, the City's Civil Service Board adopted a rule ("Rule 9") addressing how firefighters were compensated for leave. *See* Doc. 27-31 at 85, 94–97. For vacation, Rule 9 stated that employees would "be paid his or her regular salary during the period of time he or she is on vacation," and set forth the following chart delineating the number of vacation hours an employee accrued based on his or her tenure:

D. <u>Vacation Time</u>

| <u>Length of Employment</u> | <u>Minimum Number of vacation hours per year</u> |
|---|---|
| a. from 6 months to one year | 48 hours |
| b. from 1 year to 5 years | 96 hours |
| c. from 5 years to 10 years | 112 hours |
| d. from 10 years to 15 years | 128 hours |
| e. over 15 years | 144 hours |

*Id.* at 94–95. Rule 9 also stated, "There is no limit on the amount of sick leave that can be accumulated and used for legitimate purposes during an employee's employment with the City" and that employees would be paid "at the[ir] regular rate of pay" for their sick and vacation leave when he or she leaves employment with the City, although there may be a cap on the number of hours for which he or she may be compensated. *Id.* at 94–96.

The vacation policy in the City's employee handbook was consistent with Rule 9 and stated that employees earned vacation hours based on their tenure with the City. *See* Doc. 38-1 at 67 (2016 employee handbook); *id.* at 16 (2021 employee handbook). The employee handbook also specified that City employees received holiday and sick leave time in eight-hour increments based on the monthly tenure of the employee. *See id.* at 69–70 (2016 employee handbook); *id.* at 18 (2021 employee handbook). At this time, the City gave the firefighters a number of holiday days, which the fire department permitted them to use at any time—that is, the firefighters could "bank" those days for use at a later date. Doc. 27-27 at 22–23. Although the City's employee handbook "specifie[d] an eight-hour day" for holidays, *id.* at 23; *see* Doc. 38-1 at 17 (2021 employee handbook), the firefighters "used them as 24 hour[]" days, Doc. 27-27 at 23.

In September or October 2021, all City employees "were told that the City would no longer [bank] holidays" and that employees would no longer "be able to

5

take th[ose days] off at a later date." Doc. 27-27 at 23. Instead, they would receive compensation for eight hours for that holiday. *Id.* at 23–24.

In November 2021, the plaintiffs complained to the Jasper Civil Service Board about their inability to bank holidays and payment for eight hours instead of twenty-four for those days. Doc. 36-1 at 1. They "ask[ed] th[e] Board to correct" the decision. *Id.* The Civil Service Board held a hearing on the complaint, but ultimately dismissed the case, at plaintiffs' counsel's request, for lack of jurisdiction. *See* Doc. 36-2 at 2–3. In June 2022, the plaintiffs sent the City notices of their claims. *See* Doc. 36-3 at 1–6.

In August 2022, the City passed a new pay plan for its employees, which "provide[d] additional pay benefits to every job description" for the City. Doc. 27-34 at 1. The firefighters received a pay raise under this new pay plan. *See, e.g.*, Doc. 27-11 at 5–6. *See generally* Doc. 27-34; Doc. 27-35.

### B. The Twenty-Eight-Day Work Period

#### 1. The Firefighters' Compensation for Hours Worked and Overtime

Because of confusion caused by the incorrect pay rate listed on the firefighters' paychecks under the nineteen-day work period, Chief Fields asked the City to switch to a twenty-eight-day work period so it would be "more applicable for the fire department." Doc. 27-26 at 6; *see* Doc. 27-27 at 15. In September of 2022, the City passed a resolution in which it adopted a twenty-eight-day work

period, meaning the firefighters worked 212 hours in a twenty-eight-day period. *See* Doc. 27-33 at 2; Doc. 27-36 at 1; Doc. 27-27 at 14; Doc. 27-26 at 6, 8; Doc. 27-14 at 6. The City was "trying to get the pay periods to . . . better . . . match [the firefighters'] work period," and to "make it more simple" for the firefighters and payroll personnel to understand. Doc. 27-27 at 15–16; *see* Doc. 27-33 at 1.

Under the twenty-eight-day work period, the City calculated a firefighter's hourly rate by dividing that firefighter's annual salary by 2,756 hours, which is the number of hours firefighters work annually, and then multiplying that rate by the actual number of hours they worked. *See* Doc. 27-33 at 2; Doc. 27-27 at 10, 14. Because of this change, the firefighters were "paid for every hour that they worked based on that regular hourly rate," and the City no longer had to "convert to an hourly rate" for its overtime calculation like it did under the nineteen-day work period. Doc. 27-27 at 14. It is undisputed that the firefighters worked the same schedule under the twenty-eight-day work period—twenty-four hours on, forty-eight hours off. *See, e.g.*, Doc. 27-13 at 9.

The firefighters' checks under the twenty-day work period reflected the actual number of hours he or she worked that week. *See, e.g.*, Doc. 27-37 at 71; Doc. 36-18 at 2; *see also* Doc. 27-26 at 8–9. Because the checks reflected the firefighters' actual hours worked (rather than eighty-hours), the "PAY RATE" included on these checks reflected the firefighters' biweekly salary divided by the actual number of

7

hours worked by the firefighter. *See* Doc. 36-18 at 2. Therefore, the pay rate listed on these checks was lower than the pay rate on the checks given under the nineteen-day work period (which were incorrect and not used by the City). *See* Doc. 27-26 at 8–9. *Compare* Doc. 36-18 at 1 (pay rate of $22.99 for nineteen-day pay period), *with* Doc. 36-18 at 2 (pay rate of $20.60 for twenty-eight day pay period).

To illustrate the difference, consider one example. Under the nineteen-day work period, plaintiff Kenneth Miller received $1,839.14 biweekly salary. Doc. 27-37 at 70; *see* Doc. 27-13 at 7. Although the check reflected that Mr. Miller received a salary, it also stated "80.00" underneath the heading "HOURS" and listed a "PAY RATE" of $22.99—$1,839.14 divided by eighty-hours. *See* Doc. 27-37 at 70; Doc. 27-13 at 7.



Doc. 27-37 at 70. Mr. Miller testified that he "never just worked the 80 hours salary" and "always worked 106 [hours] on average." Doc. 27-13 at 13; *see id.* at 7. Because

Mr. Miller always worked more than eighty-hours, the City did not use this pay rate in its overtime compensation calculation. *See* Doc. 27-26 at 5–6.

After the City's change to the twenty-eight-day pay period, Mr. Miller's check reflected that he worked 122.25 hours, was paid hourly, and received a biweekly salary of $2,518.35. Doc. 27-37 at 71. Accordingly, the "PAY RATE" listed is 20.60—$2,518.25 divided by 122.25 (Mr. Miller's actual hours). *Id.*

**City of Jasper**

| EMPLOYEE NAME | | | EMPLOYEE ID | PAY PERIOD | CHECK DATE | NOTIFICATION NUM |
|---|---|---|---|---|---|---|
| KENNETH A MILLER | | | 3480 | 11/04/2022 | 11/11/2022 | 62508 |

DEPT: 3510

| TYPE | HOURS | CURRENT | Y-T-D | DEDUCTION | CURRENT | Y-T-D | LEAVE BALANCE AS OF 11/08/2022 | |
|---|---|---|---|---|---|---|---|---|
| HOURLY | 73.50 | 1,514.10 | 4,032.45 | RETIR6 | 128.58 | 2,868.67 | VAC | 112.00 |
| OT | | | 99.84 | BCBSFT22 | 101.03 | 2,121.63 | SICK | 774.00 |
| LONGEVIT | | 18.42 | 423.66 | PRIN INS | 40.30 | 443.30 | BIRTHDAY | 0.00 |
| LONGOT | | | 228.82 | Kansas T | 0.37 | 7.77 | | |
| HOL | 24.00 | 494.40 | 659.20 | | | | | |
| CALL OUT | 2.00 | 62.50 | 17,168.41 | | | | | |
| HOLPD | 0.00 | 53.56 | 1,648.36 | | | | | |

| | CURRENT | Y-T-D | | |
|---|---|---|---|---|
| GROSS WAGE | 2,142.98 | 62,278.12 | FEDERAL EXEMPTIONS | 0 |
| FICA/MEDICARE | 163.93 | 4,764.29 | STATE EXEMPTIONS | 0 |
| FEDERAL TAX | 165.92 | 5,417.14 | MARITAL STATUS | M |
| STATE TAX | 89.62 | 2,643.23 | ADDL FED WH | 0.00 |
| TOTAL DEDUCTIONS | 270.28 | 5,441.37 | ADDL STATE WH | 0.00 |
| NET PAY | 1,453.23 | 44,012.09 | | |
| | | | PAY RATE | 20.60 |

*Id.* On the next pay period, Mr. Miller was paid $1,514.10 for 73.50 hours, and the pay rate listed was $20.60—$1,514.10 divided by 73.50. *Id.* at 72.

9

```
City of Jasper
                EMPLOYEE NAME              EMPLOYEE ID   PAY PERIOD   CHECK DATE   NOTIFICATION NUM
              KENNETH A  MILLER               3480       10/21/2022   10/28/2022       62300
                                                                                    DEPT:  3510
        TYPE      HOURS    CURRENT    Y-T-D      DEDUCTION  CURRENT   Y-T-D    LEAVE BALANCE AS OF 10/25/2022
     HOURLY      122.25   2,518.35   2,518.35   RETIR6      162.09   2,740.09  VAC              112.00
     OT                                 99.84   BCBSFT22    101.03   2,020.60  SICK             774.00
     LONGEVIT                18.42     405.24   Kansas T      0.37       7.40  BIRTHDAY           0.00
     LONGOT                             228.82  PRIN INS              403.00
     HOL           8.00     164.80     164.80
     CALL OUT                        17,105.91
     HOLPD         0.00       0.00    1,594.80

     GROSS WAGE            2,701.57  60,135.14
     FICA/MEDICARE           206.67   4,600.36                        FEDERAL EXEMPTIONS      0
     FEDERAL TAX             228.93   5,251.22                        STATE EXEMPTIONS        0
     STATE TAX               114.40   2,553.61                        MARITAL STATUS          M
     TOTAL DEDUCTIONS        263.49   5,171.09                        ADDL FED WH          0.00
     TOTAL DEDUCTIONS        263.49   5,171.09                        ADDL STATE WH        0.00
     NET PAY               1,998.08  42,558.96
                                                                      PAY RATE            20.60
```

*Id.* The differing pay is consistent with Mr. Miller's testimony that the firefighters worked twenty-four hours and then received forty-eight hours off—which is the equivalent of working on a rotation of either ninety-six hours or 120 hours. Doc. 27-13 at 4, 7.

### 2. The Firefighters' Compensation for Paid Leave

The City's 2022 resolution maintained that firefighters cannot "bank" holiday days "for use at a later date" and stated that the firefighters would receive eight hours of holiday pay. Doc. 27-33 at 1–2. It stated that the pay rate for a firefighter's holiday and sick hours would "be calculated by dividing his or her annual salary by 2,080 hours, which is not the exact number of hours worked by an employee of the fire department in a year, but is the approximate number of hours, exclusive of overtime, worked by other employees of the City." *Id.* at 2.

The resolution increased the firefighters' accrual of vacation hours: "Employees of the Jasper Fire Department who work 24-hour shifts shall earn

10

vacation at the rate of 1.5 times the rate specified in the . . . Employee Handbook for employees who regularly work a 40-hour weekly schedule." *Id.*; *see* Doc. 27-27 at 24–25.

### C. The Present Lawsuit

The plaintiffs sued the City and asserted their claims in three counts. *See* Doc. 24. In Count I, they asserted claims for unpaid overtime under the FLSA based on use of an incorrect hourly rate to calculate overtime pay. *Id.* ¶¶ 109–21. In Count II, they asserted claims of retaliation under the FLSA because they alleged their hourly pay rate decreased under the twenty-eight-day work period, which was adopted after the City received their complaints. *Id.* ¶¶ 122–28. And in Count III, they asserted a claim for breach of contract under the Jasper Civil Service Law for the City's changes in compensation for paid leave. *Id.* ¶¶ 129–37.

The City moved for summary judgment. *See* Doc. 29. The motion is fully briefed. *See* Docs. 30, 37, 38.

## II. LEGAL STANDARD

A party moving for summary judgment must establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute "if the evidence is

such that" the trier of fact "could return a verdict for the nonmoving party." *Id.* (cleaned up). In deciding a motion for summary judgment, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up).

## III.  ANALYSIS

### A. Violation of the FLSA Overtime Compensation Requirements (Count I)

The City argues that even though the plaintiffs' checks under the nineteen-day work period listed that they worked eighty hours and showed an incorrect pay rate based on that hourly figure, the undisputed evidence demonstrates that it paid the plaintiffs overtime as contemplated under the FLSA—by dividing their salary by the number of hours they worked and multiplying it by 1.5. Doc. 30 at 13–18.

The plaintiffs respond that there is a genuine dispute of material fact regarding whether they were paid appropriate overtime because (1) prior to the City's adoption of the twenty-eight-day work period, the firefighters' checks included an "hourly rate" that was "higher" than what the City used to calculate the plaintiffs' overtime, and (2) "the City used differing pay rates" to calculate paid leave and overtime. Doc. 37 at 11.

The FLSA requires an employer to compensate an employee who works more than forty hours in a workweek "at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). A municipality like the City is an "employer" subject to the requirements of the FLSA. *See Knight v. Columbus*, 19 F.3d 579, 583 (11th Cir. 1994).

The FLSA provides special overtime rules for an "employee in fire protection activities." 29 U.S.C. § 207(k); *see Huff v. DeKalb Cnty.*, 516 F.3d 1273, 1277 (11th Cir. 2008). An employee in fire protection activities is entitled to "one and one-half times the regular rate at which he is employed" when he works a certain ratio of hours to days. 29 U.S.C. § 207(k). Specifically, a firefighter can work 212 hours within a twenty-eight-day work period or 144 hours within a nineteen-day work period before being entitled to overtime. 29 C.F.R. § 553.230; *see* 29 U.S.C. § 207(k).

The amount of overtime that a firefighter is owed depends on his or her "regular rate." 29 U.S.C. § 207(k) (calculating overtime at "one and one-half times the regular rate at which he [or she] is employed"). The Department of Labor defines an employee's "regular rate" as his or her "rate per hour." 29 C.F.R. § 778.109. Where an employee is paid a salary, his or her rate per hour is computed "by dividing [the employee's] total remuneration for employment . . . in any workweek by the total number of hours actually worked by him." *Id.* § 778.109; *see id.* § 778.108.

Compensation for "occasional periods when no work is performed due to vacation, holiday, illness, . . . or other similar cause" is not included in an employee's "regular rate." 29 U.S.C. § 207(e)(2); *see* 29 C.F.R. § 778.200(a)(2); 29 C.F.R. § 778.219(a) ("[C]ertain payments made to an employee for periods during which he performs no work because of a holiday, vacation, or illness are not required to be included in the regular rate because they are not regarded as compensation for working.").

The plaintiffs do not argue that they do not qualify for the overtime compensation exception applicable to those in fire protection activities, nor do they argue that the City failed to pay them overtime compensation. *See generally* Doc. 37.[1] Instead, they claim that the City failed to pay them overtime at the appropriate rate. *See id.* at 11.

The plaintiffs argue that their "paychecks reflected an hourly rate which was not used to calculate time-and-a-half overtime" under the nineteen-day work period.

---

[1] To the extent that the plaintiffs attempt to present an argument of this nature in footnote 2 of their brief, Doc. 37 at 8 n.2, the court declines to consider it. The Eleventh Circuit and numerous district courts have declined to consider substantive arguments made only in footnotes. *See Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987); *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019); *Burks v. Comm'r of Soc. Sec.*, No. 2:23-CV-01045-JHE, 2024 WL 4228616, at *3 n.4 (N.D. Ala. Sept. 18, 2024); *Club Madonna, Inc. v. City of Miami Beach*, No. 16-25378-CIV, 2023 WL 3534077, at *8 (S.D. Fla. May 18, 2023); *Landrum v. City of Coll. Park*, No. 1:21-CV-716-AT-CCB, 2022 WL 22361949, at *10 n.10 (N.D. Ga. July 21, 2022), *report and recommendation adopted*, No. 1:21-CV-716-AT, 2022 WL 22361947 (N.D. Ga. Aug. 26, 2022). This court too declines to consider the plaintiffs' substantive arguments made only in footnotes. And in any event, the plaintiffs later state in their brief that "[t]his is not a case where the Plaintiffs are arguing that the City should not have treated them as exempt under the 7(k) exemption." Doc. 37 at 17.

Doc. 37 at 15. But the plaintiffs have presented no evidence indicating that they worked a forty-hour workweek such that the pay rate listed on the check should have been used to calculate their overtime. Indeed, each of the plaintiffs testified that they worked more than that. *See, e.g.*, Doc. 27-16 at 6–7; Doc. 27-9 at 7.

The evidence demonstrates that the City calculated the plaintiffs' "regular rate" by dividing the individual plaintiff's salary by the number of hours worked—not the undisputedly incorrect eighty-hour figure listed on the checks. *See, e.g.*, Doc. 27-26 at 5–6, 8. The City's method of calculating overtime is consistent with FLSA overtime requirements. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 778.109.

The plaintiffs' arguments about differing pay rates for holidays, vacation, and sick leave are also unavailing. The FLSA specifically excludes compensation for such time from calculating an employee's overtime compensation. *See* 29 U.S.C. § 207(e)(2). And the FLSA mandates appropriate compensation for hours worked, not for paid leave. *See Wince v. CBRE, Inc.*, No. 19-cv-01546, 2020 WL 6273479, at *9 (N.D. Ill. Oct. 26, 2020) ("[T]he FLSA does not require payment for time *not* worked."); *Okonkwo v. Callins L. Firm, LLC*, No. 1:14-CV-02263-ELR, 2015 WL 12880529, at *4 n.2 (N.D. Ga. Dec. 14, 2015), *aff'd*, 668 F. App'x 875, 876 (11th Cir. 2016) ("The FLSA does not require . . . vacation pay. . . ." (cleaned up)).

Accordingly, the City's motion for summary judgment is **GRANTED** as to Count I.

### B. Retaliation (Count II)

The City argues that the plaintiffs cannot establish that they suffered an adverse employment action. Doc. 30 at 19–24. It argues that, if anything, it increased the plaintiffs' salaries after receiving their complaints when it passed the new 2022 pay plan. *Id.* at 20–24. And it argues that even if the plaintiffs could establish that some of them received lower pay, several plaintiffs "were not even employed by [the City] during the period of time covered by this claim," and therefore the City could not have retaliated against those plaintiffs. *Id.* at 24–25.

The plaintiffs concede that the plaintiffs who were not employed at the time of the allegedly retaliatory activities cannot pursue a retaliation claim and do not oppose summary judgment in the City's favor for those plaintiffs on Count II. Doc. 37 at 19 n.4. For the plaintiffs who were employed at the relevant time, they argue "that after they complained to the City" about their pay, "the City changed the way it calculated its pay periods to reduce the Plaintiffs' hourly rate used for overtime compensation to punish" them. *Id.* at 19. They argue that by changing from a nineteen-day work period to a twenty-eight-day work period, the City decreased the hourly rate it used to calculate the plaintiffs' overtime, holiday pay, and other leave. *Id.* at 19–20.

An employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted . . . any

16

proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). "To prove retaliation, a plaintiff must ultimately show: (1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between [the employee's] activity and the adverse action." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 648 (11th Cir. 2019) (cleaned up).

The plaintiffs have not demonstrated that they "suffered adverse action" by the City. *Smith*, 940 F.3d at 648. The evidence—including some of the plaintiffs' own testimony—reveals that the City gave the firefighters a raise and did not decrease their salaries. *See, e.g.*, Doc. 27-11 at 5–6; Doc. 27-2 at 10. As one example, plaintiff Eric Naramore stated that his biweekly salary under the nineteen-day work period was $1,839.13, which is $47,817.38 annually. *See* Doc. 27-15 at 23; Doc. 36-18 at 1. After the twenty-eight-day work period was adopted, Mr. Naramore's salary increased to $56,777.42. Doc. 27-34 at 1–2; *see* Doc. 36-18 at 2.

The plaintiffs' argument that the City lowered their hourly rate is based on the pay rate that was included on their paychecks under the nineteen-day work period. Doc. 37 at 11–16. But as explained above, the pay rate listed on those checks was the result of the computer software used by the City, was incorrect, and was (appropriately) not relied upon by the City to calculate the plaintiffs' overtime in the

first place. *See supra* Part III.A. There is no evidence that the City decreased the plaintiffs' pay when it enacted the twenty-eight-day work period.

Accordingly, the City's motion for summary judgment is **GRANTED** as to Count II.

### C. Breach of Contract (Count III)

The City argues that the plaintiffs' claim that the changes in paid leave policies breached the Jasper Civil Service Law and employee handbook is "plainly inaccurate." Doc. 30 at 26. It also argues that if the court dismisses the FLSA claims but disagrees with its breach of contract arguments, the court should decline to exercise supplemental jurisdiction over the breach of contract claim. Doc. 30 at 30–32.

The plaintiffs argue that the City breached a contract with them and breached Jasper Civil Service law by compensating them for eight hours of holiday and vacation pay instead of twenty-four hours. Doc. 37 at 27–32.

Because the court grants summary judgment on the plaintiffs' federal law claims, *see supra* Part III.A–B, there is no longer an independent basis for subject matter jurisdiction over the plaintiffs' state law breach of contract claims. The court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Count III is **DISMISSED WITHOUT PREJUDICE**, and the City's motion for summary judgment is **DENIED AS MOOT** as to Count III.

## IV. CONCLUSION

For the reasons stated above, the City's motion for summary judgment, Doc. 29, is **GRANTED IN PART** and **DENIED IN PART AS MOOT**. Counts I and II will be **DISMISSED WITH PREJUDICE**, and Count III will be **DISMISSED WITHOUT PREJUDICE**. A final judgment will be entered consistent with this opinion.

**DONE** and **ORDERED** this 8th day of September, 2025.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE